**JACKSON COURT CONDOMINIUMS, INC., Plaintiff-Appellant,**

v.

**CITY OF NEW ORLEANS, Defendant-Appellee.**

No. 87-3812.

United States Court of Appeals, Fifth Circuit.

June 13, 1989.

Warren A. Goldstein, New Orleans, La., for plaintiff-appellant.

Bruce E. Naccari, Okla Jones, II, Eleanor K. Roemer, City Attys., New Orleans, La., for defendant-appellee.

Before WILLIAMS and GARWOOD, Circuit Judges, and NOWLIN *, District Judge.

JERRE S. WILLIAMS, Circuit Judge:

Jackson Court Condominiums, Inc., the former owner of a condominium complex, sued the City of New Orleans after the Council of the City of New Orleans (hereafter "the City Council" or "the Council") passed a moratorium on the establishment of time-share condominiums in residential areas. The Council then refused to grant the company an exemption from the moratorium under a waiver provision. The $3.5 million suit alleges equal protection violations, both substantive and procedural due process violations, various state law claims, and an unconstitutional taking. The district court granted summary judgment for the city, and Jackson Court filed a timely appeal. We find the district court's ruling correct and affirm its judgment.

*Factual and Procedural Background*

In the early 1980's time-share condominiums were a rapidly growing phenomenon and developers began to build or create them in New Orleans. The City Council of New Orleans became concerned that this phenomenon would have a deleterious effect on the city's historic neighborhoods.

As a result, in December 1980, the City Council passed an ordinance asking the City Planning Commission to make a comprehensive zoning study of time-sharing and transient vacation rentals. At the same time it embarked on a program of creating moratoriums on time-shares, first in the Vieux Carré district, nine months later in the Faubourg Marigny district, and finally on October 22, 1981, it passed Ordinance 8344 M.C.S. which created a city-wide moratorium on time-shares within certain zoning classification areas.[1] This moratorium contained a provision allowing the Council to grant a waiver to a covered party if it could demonstrate that it would experience undue hardship and the time-share would not adversely affect the character of the neighborhood.[2]

During this same period, the Council began considering and holding hearings on proposals to create a ban upon time-shares in certain zoning classification areas including family residential districts. But it was not until April 23, 1982, that the final policy of the city creating a permanent ban on time-shares in RM–1 and RM–2 residential

---

* District Judge of the Western District of Texas sitting by designation.

1. The moratorium included a prohibition on new time-share plans in the single family residential, two-family residential, multiple-family residential, medical service, general office, and special industrial zoning districts.

2. Jackson Court claims that this ordinance was passed without any notice to the public. The City claims there was some constructive notice, as the minutes of a previous City Council meeting, at which the moratorium was proposed, were published in the *Times-Picayune* on the morning of the day the moratorium was to be considered.

districts was enacted. While these policy making activities of the city were going on, Jackson Court Condominiums, Inc. on August 15, 1981, purchased a 21–unit apartment building on the edge of the Garden District in an area zoned for RM–2 uses. Jackson Court officials were aware that the city was considering a comprehensive zoning amendment which would ban time-share condominiums in the RM–1 and RM–2 zoning districts. Jackson Court's purchase was made ten days after the Planning Commission's first public hearing.

Jackson Court purchased the apartments with the intent of transforming them into luxury time-share condominiums, and to that end invested $1.2 million in the property. A map which Jackson Court prepared for trial shows 40 properties in the neighborhood of Jackson Court, 29 of which were non-transient residential uses, six of which were community uses, four of which were small-scale commercial and business uses, and one of which was a boarding house.

Jackson Court eventually applied for a waiver from the provisions of the city-wide time-share moratorium, and had a hearing before the City Council on April 15, 1982. The day prior to the hearing, Jackson Court had filed a condominium declaration (which contained provisions permitting time-sharing) with the Conveyance Office of the Parish of Orleans and had registered with the City of New Orleans. The City Council refused Jackson Court's application for a waiver in a 6–1 vote. Councilman Singleton, whose district included Jackson Court, informed Jackson Court at the hearing that he did not think he could vote for the waiver because of neighborhood reaction against the time-share arrangement, and he advised Jackson Court that litigation might be the only alternative. Jackson Court claims that the City Council had a functioning "gentlemen's agreement" regarding zoning matters under which each councilmember agreed to vote as did the councilmember from the affected district. Thus, Jackson Court claims that because the Councilman from its district had already made up his mind, the Council had already made up its collective mind, and

Jackson Court could not have received a fair hearing regardless of the merits of its case.

The Council had previously exempted four time-share projects from the provisions of Ordinance No. 8293 M.C.S., the earlier Faubourg Marigny moratorium. Those exemptions were granted between September 3, 1981 and December 10, 1981. While Jackson Court was the only time-share project to come before the Council and not get a waiver, it was also the only project which applied for a waiver under the later city-wide moratorium.

One week after Jackson Court's application for a waiver was rejected, Ordinance No. 8585 M.C.S. modified the comprehensive zoning ordinance to include a permanent ban on time-shares in RM–1 and RM–2 residential districts.

After the waiver denial Jackson Court used the apartment complex as a set of luxury apartments rather than as a time-share complex. Eventually, Jackson Court lost ownership of its property at a foreclosure sale instituted by a mortgage creditor.

Jackson Court first filed suit in state court, requesting injunctive relief and claiming that Ordinance 8344, the city-wide moratorium of October 1981, was in violation of Louisiana state law, local procedural law, and the city charter. Jackson Court further claimed that its due process and equal protection rights had been violated. The relief was denied. On appeal the Circuit Court of Appeals of the State of Louisiana found the issue moot as Jackson Court had ceased to be owner of the property in question. The Supreme Court of Louisiana denied certiorari.

Jackson Court then brought a 42 U.S.C. § 1983 suit in federal court. Initially New Orleans was given summary judgment on the basis of *res judicata*. This decision was reversed and remanded on appeal. *Jackson Court Condominiums, Inc. v. City of New Orleans*, 793 F.2d 1288 (5th Cir.1986) (unpublished). On remand, the district court again granted summary judgment for the City of New Orleans, finding

that it had no jurisdiction over the case under 42 U.S.C. § 1983 because Jackson Court did not state any valid claims of deprivation of constitutionally secured rights. *Jackson Court Condominiums, Inc. v. City of New Orleans,* 665 F.Supp. 1235 (E.D.La.1987). This decision is the subject of the appeal.

Five issues are raised: 1) Did the City of New Orleans deny Jackson Court procedural due process when passing the moratorium on time-shares or when rejecting its application for a waiver? 2) Was Jackson Court denied substantive due process in either of these actions? 3) Did these actions violate Jackson Court's right to equal protection? 4) Did Ordinance 8344, the moratorium, or 8585, creating a permanent ban, effect an unconstitutional taking of property? 5) Was Jackson Court unfairly denied a jury trial? Because we affirm the district court's summary judgment ruling on the four constitutional claims, we find the district court was correct in finding no jurisdiction and hence dismissing the case, along with some pendant state claims which we do not consider here. The jury trial issue therefore is moot. We examine the other four issues in order.

## I. *Procedural Due Process*

### A. The Moratorium

Jackson Court claims that it had a property right in its time-share project and that this property right was violated without procedural due process when the City Council passed the city-wide moratorium.

This Court has held that

If the action of the City Council is viewed as administrative/adjudicative, procedural due process rights may attach. These procedural rights follow only if the landowner establishes a property right created by state or local law. The amount of process due depends on the balancing of interests as enunciated in *Mathews v.*

**3.** It is unclear whether this is a flat rule that no zoning decision could *ever* violate procedural due process, and although *South Gwinnett* is still vital, *County Line* seems to hedge this standard.

*Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

*County Line Joint Venture v. Grand Prairie, Texas,* 839 F.2d 1142, 1144 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 223, 102 L.Ed.2d 214 (1988). Jackson Court argues that it had a property right which was protected by procedural due process rights. The trial court, however, granted summary judgment against Jackson Court's procedural due process claims on three grounds: 1) The passage of the moratorium was a legislative act, not an administrative act, and hence no procedural due process rights attached. 2) Jackson Court had no constitutionally protected property interest. 3) If any procedural due process was required, the post-deprivation hearing fulfilled the requirements. We need not and do not address each of these findings; the first is sufficient to affirm the district court's holding.

▆▆▆ The dispositive inquiry here is whether the moratorium was a legislative or administrative action. If it was administrative, Jackson Court might have been owed some level of procedural due process. However, it is well established law that once an action is characterized as legislative, procedural due process requirements do not apply. *Bi–Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915); *United States v. LULAC,* 793 F.2d 636, 648 (5th Cir.1986).

In cases similar to this, where a zoning decision has been made by an elected body such as a City Council, we have characterized the action as legislative or "quasi-legislative" negating procedural due process claims. A local zoning decision is "a quasi-legislative procedure, not subject to federal juridical consideration in the absence of arbitrary action." *South Gwinnett v. Pruitt,* 491 F.2d 5, 7 (5th Cir.) (en banc), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974).[3]

Although we recognize that circumstances may arise in which the zoning decision of a governmental body, such as a county commission or a city council, may require some procedural due process, the circumstances

A situation quite similar to that presented here led to a finding of no procedural due process right violation in *Couf v. De Blaker*, 652 F.2d 585 (5th Cir.1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982). A developer bought waterfront property intending to build condominiums. This was a permitted use at the time of purchase. After purchase, however, the city council instructed the planning commission that all waterfront property be "down-zoned" and that the planning commission should refuse to accept applications for building permits. The developer asserted that he was deprived of his property without due process of law. On appeal this Court held that local zoning decisions have been repeatedly characterized as legislative in nature, and therefore no action could be brought for denial of procedural due process, "for no constitutional limitation on legislative procedure is relevant here." *Couf*, 652 F.2d at 590.

Similarly, in *County Line* a purchaser of property applied for and received a specific use permit (SUP) allowing it to sell alcoholic beverages on the premises of its property. The City Council of Grand Prairie, however, later passed an ordinance which automatically extinguished all SUP's after six months of non-use. When County Line's tenant later applied for an alcoholic beverage license and other licenses, a city employee checked the records and discovered that County Line no longer possessed an SUP. County Line argued that it had received no notice of the City Council's ordinance and hence that its right to procedural due process had been violated. On appeal, we held:

> Conduct of a municipal body is likely to be deemed legislative when an elected group, such as a city council, makes a general zoning decision which applies to a large group of interests. Conversely, a municipal body's action may be more likely termed adjudicative if an appointed group, such as a zoning board, makes a

specific decision regarding a specific piece of property.

*County Line*, 839 F.2d at 1144. The court went on to hold that the city's ordinance applied generally to all SUP's in existence and was purely an exercise of the City Council of Grand Prairie's broad legislative powers.

Jackson Court argues that *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir.) (en banc), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986) established that procedural due process can be applied to zoning decisions. The *Shelton* case was not so broad. *Shelton* focused on substantive due process rights. The only procedural claim was that a council-member should have disqualified himself from a zoning decision because the church to which he belonged opposed the parking variances for which Shelton had applied. *Shelton* flatly held that zoning decisions are to be reviewed by the same constitutional standards employed to review statutes enacted by state legislatures. *Id.* at 479.

Jackson Court also argues that *Schafer v. City of New Orleans*, 743 F.2d 1086 (5th Cir.1984) established that procedural due process claims may be raised in zoning decisions. That case, like the present controversy, involved a moratorium on certain uses of property in a given area (fast food restaurants in a certain neighborhood of New Orleans). The Court did consider and decide whether the requirements of procedural due process had been met:

> The landowners have certainly received procedural due process. They had actual notice of the introduction of the ordinance, appeared at the hearing preceding its adoption, and availed themselves of the opportunity to argue against its adoption. This sufficed.

*Schafer*, 743 F.2d at 1089. This decision does not contradict the other cases which state that zoning decisions are legislative and not subject to the requirements of pro-

---

presented in this case do not call for such a ruling.
*County Line*, 839 F.2d at 1145. However, no circumstances where procedural due process

rights would apply to a legislative action have been delineated.

cedural due process. The *Schafer* court stated that the process received was *sufficient*. It did not state what conditions, if any, are *necessary* for procedural due process. This statement was simply not a negative pregnant.

A district court in another circuit when faced with a similar zoning case has held that there is a flat rule that procedural due process does not apply in these circumstances. "The procedural due process requirement of notice and hearing is not applicable to a legislative body in the performance of its legislative functions." *Q.C. Construction Co., Inc. v. Gallo,* 649 F.Supp. 1331, 1335 (D.R.I. 1986), *affirmed without opinion,* 836 F.2d 1340 (1st Cir. 1987). The district court below employed this authority. We do not need such a broad rule, however, to decide this case. We simply hold, as we did in *County Line,* that the moratorium enacted by the City Council of New Orleans on October 22, 1981, was a legislative decision of broad applicability by an elected City Council, and hence no procedural due process rights attached.[4]

### B. The Waiver Proceeding

■ The decision denying Jackson Court's application for a moratorium waiver took place just eight days before the Council enacted the ban upon time share condominiums in the applicable zoning residential district. Thus, the waiver remains of critical importance. If it had been granted, Jackson Court could have gone ahead with its plan since it would have fallen under the "grandfather clause" of § 35 of Ordinance 8585 (the permanent ban).[5]

Jackson Court argues that it was denied procedural due process in its waiver hearing before the City Council on April 15, 1982. Jackson Court concedes that it received notice and an opportunity to present its case. Rather the claim is that Councilman Singleton, who represented the Garden District, had an "irrevocably closed mind" and that because of the gentlemen's agreement his predisposition denied Jackson Court a fair hearing before the City Council. Because we are reviewing a grant of summary judgment, we will assume for purposes of this review, as did the district court below, that the gentlemen's agreement did indeed exist. This assertion seems aimed largely at the substantive due process claim, but we also analyze it under a claim of failure to afford procedural due process.

Jackson Court relies on *Hornsby v. Allen,* 326 F.2d 605 (5th Cir.1964), in which we held that an alleged system of ward courtesy amongst the Mayor and Board of Alderman of the City of Atlanta might have denied Hornsby procedural due process in her application for a liquor license. This Court has explicitly held, however, that *Hornsby* does not apply to zoning cases. *South Gwinnett,* 491 F.2d at 7 n. 1.

The appropriate standard for measuring this allegation is found in *Price v. City of Junction, Texas,* 711 F.2d 582 (5th Cir. 1983). In *Price* persons applying for a waiver from the city's "junk car" ordinance claimed that their waiver hearing before the City Council violated procedural due process because it was before the same group of councilmembers that passed the ordinance, who therefore could not be impartial. On appeal we held that we would not presume that publicly elected council-

---

4. There is a dispute concerning whether notice was given prior to the moratorium. The City of New Orleans claims that at least constructive notice was given since the minutes of the previous City Council meeting at which the moratorium was proposed were published on the morning of October 22, 1981, in the *Times-Picayune.* Jackson Court however argues that the City of New Orleans agreed in a prior stipulation of fact that no notice at all was given. This dispute is now irrelevant, because of our holding that no procedural due process rights attached here.

5. Ordinance 8585 § 35 states:

[N]o original grantee ... who has been granted a valid waiver by ordinance from the provisions of the time share moratoriums established by ... Ordinance 8344 M.C.S., [the citywide moratorium] with regard to a specific time share plan shall be denied a permit within one year from the effective date of this ordinance for that time share plan on the basis of the provisions of this ordinance....

members could not act impartially in such a hearing. The standard employed was that of the Supreme Court in *Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). There the Supreme Court required a showing of actual unfairness or partiality, such as some personal or financial stake amounting to a conflict of interest to justify disqualification of the board. *Id.* at 491–93, 96 S.Ct. at 2313–14.

No such conflict of interest on the part of Councilman Singleton has been shown. There is nothing in this case which indicates that Singleton was not capable of judging the particular controversy on the basis of its own circumstances. Indeed, the president of Jackson Court, the person applying for the waiver, Mr. Pierre Villere, stated at the hearing that he felt Mr. Singleton had "looked at both sides of the argument from the beginning."

Certainly Councilman Singleton stated after Jackson Court's initial presentation that he was irrevocably opposed to the project because of the neighborhood opposition to the time-share project. Just because Councilman Singleton was forthright concerning his own opinion on the Jackson Court waiver, however, does not mean he violated procedural due process. The Supreme Court held in *Hortonville* that "a decisionmaker [is not] disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Hortonville,* 426 U.S. at 493, 96 S.Ct. at 2314 (citations omitted). It is the nature of the legislative process that members of a legislative body may have taken public positions on controversies which may come before them. As stated *supra,* this waiver hearing was such a legislative proceeding.

Finally, this Court has held that decisions regarding the reclassification of a piece of property under an existing plan are as legislative in character as the adoption of a comprehensive zoning plan. *South Gwin-*

*nett,* 491 F.2d at 7. "Nothing internal to the legislative model impedes its application to a specific zoning decision." *Shelton,* 780 F.2d at 480. The analysis employed above concerning the legislative nature of a zoning decision, therefore, applies as well to the waiver hearing. The district court's summary judgment for appellee on the issues involving procedural due process was well founded.

## II. *Substantive Due Process Claims*

### A. The Moratorium

■ Jackson Court claims that it was denied substantive due process when the City Council passed the city-wide moratorium on time-share arrangements in RM–1 and RM–2 residential districts. The applicable standard here was established in *Shelton.* "We hold that the outside limit upon a state's exercise of its police power and zoning decisions is that they must have a rational basis." *Shelton,* 780 F.2d at 482. The key to such an inquiry is whether the question is "at least debatable." *Id.* at 483. Those challenging a legislative decision "must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* at 479, *quoting Vance v. Bradley,* 440 U.S. 93, 110–11, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).

The preamble to Ordinance 8344, which established the temporary moratorium, states that the City Council had called upon the City Planning Commission to study time-share plans and that "[t]he proliferation of time-share plans throughout the city prior to the consideration of the recommendations of the City Planning Commission might threaten the character of residential neighborhoods." This preamble adequately delineated reasons for the Council's action. We upheld a similar moratorium against a substantive due process attack in *Schafer v. City of New Orleans:*

Interim development controls such as this moratorium have been found to play an important role in municipal planning. They aid in "bridging the gap between planning and its implementation into le-

gal measures." They may, as here, be used to preserve the status quo while study of the area and its needs is completed.

*Schafer*, 743 F.2d at 1090.

Certainly the protection of residential integrity is a legitimate objective of a zoning regulation. *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). The City of New Orleans was concerned that the implementation of time-share arrangements in residential neighborhoods would increase the noise, littering, and vandalism which might be associated with transient users. This was a legitimate concern of the city and was debatable. Therefore the moratorium reaches the threshold established in *Shelton* for substantive due process.

B. The Waiver Proceeding

■ We have heretofore concluded that the decision to not grant Jackson Court a waiver from the moratorium on time-share arrangements was a legislative act. Hence, the same standard used to analyze whether the moratorium violated substantive due process must be employed to determine whether refusal to grant the waiver violated substantive due process. The test is whether there was a rational basis for the decision. The same concerns which applied to the use of time-shares in any residential district applied in this specific case to Jackson Court. The moratorium said that the City Council "may waive" its provisions after a weighing of two competing criteria—undue hardship to those involved in the time-share arrangement versus whether it would affect the neighborhood adversely. It was within the Council's discretion to conclude after weighing these two criteria that it should not grant Jackson Court the waiver.

Jackson Court argues that existing authority supports its claim of substantive due process violation. It advances three

cases for this position. But each is distinguishable.[6] The first, *A.A. Profiles, Inc. v. City of Fort Lauderdale*, 850 F.2d 1483 (11th Cir.1988), is inapplicable because the court explicitly did not consider the substantive due process claim. *Id.* at 1488, n. 9.

In *Wheeler v. City of Pleasant Grove*, 664 F.2d 99 (5th Cir.1981) Pleasant Grove granted a property owner a permit to build an apartment complex. This "caused an uproar" in the community. A subsequent referendum showed overwhelming resistance to the proposed apartment complex and resulted in a new city ordinance which forbade construction of new apartments. The district court found that the city's purpose in enacting the measures was not a rational exercise of its police powers, and the appellate court upheld this decision.

This case is distinguishable from the present controversy on two grounds. First, in *Wheeler* the city gave a building permit and then took it away in an ordinance purporting to be of general application but in fact aimed only at one party. Second, the finder of fact held that the action was indeed without reason. All *Wheeler* demonstrates is that an irrational measure can violate substantive due process. In no way does it further Jackson Court's argument that the New Orleans ordinance in question was itself irrational.

The third case cited by Jackson Court is *Bennett v. City of Slidell*, 697 F.2d 657 (5th Cir.1983), *reversed in part on other grounds*, 728 F.2d 762 (5th Cir.1984) (en banc), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). *Bennett* held that the defendant city had unconstitutionally refused to issue an occupancy permit due to a zoning ordinance violation which was not enforced against the plaintiff's neighbors. The *Bennett* facts showed an obvious discriminatory intent. Issuance of the permits was routine. But in this instance letters were sent to the city from a prominent and disgruntled neighbor who opposed plaintiff's proposed use of his

---

**6.** Jackson Court also argues that *Hornsby v. Allen*, 326 F.2d 605 (5th Cir.1964) supports its claim of substantive due process violation.

However, as noted *supra*, *Hornsby* does not apply to zoning cases. *South Gwinnett*, 491 F.2d at 7 n. 1.

property and after receiving the letters the city began to stall on the plaintiff's applications for permits to begin his business.

The court found that the city building inspector "singled out Bennett's occupancy application for a strictissimi application of Slidell's zoning ordinance," by requiring Bennett to pave his parking lot as the ordinance required although other businesses in the neighborhood were allowed to use oyster shells to cover their parking lots. *Id.* at 661. The city building inspector then refused to issue Bennett an occupancy permit until he paved his parking lot. When he opened his business establishment in violation of the ordinance, the city building inspector had his electric power disconnected. These facts were found to establish violations of Bennett's substantive due process and equal protection rights. In *Bennett* the jury could reasonably find a discriminatory application which lacked a rational basis. In contrast, there was the rational reason for not granting Jackson Court a waiver of the time-share moratorium, the protection of neighborhood integrity.

In summary, the City of New Orleans had a rational basis for denying Jackson Court a waiver from the time-share moratorium. Summary judgment for appellee on this issue was appropriate.

III. *The Equal Protection Claim* [7]

Jackson Court also claims that it was denied its Fourteenth Amendment equal protection rights by the moratorium and the denial of its waiver application.

First, it claims that because the city-wide moratorium denied the right to establish time-share arrangements in RM–2 districts but not other transient uses (such as boarding houses) it violated the equal protection clause. This claim is disposed of easily. As the district court correctly pointed out, as long as a classification is rationally related to a legitimate state objective, a legislature is allowed to attack a perceived problem piecemeal. *Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16

L.Ed.2d 828 (1966); *Railway Express Agency v. New York*, 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949). Zoning classifications (at least in the absence of a classification affecting fundamental personal rights or based upon inherently suspect distinctions such as race, religion, or alienage) are subject to the same rational basis analysis utilized in due process claims. *Horizon Concepts, Inc. v. City of Balch Springs*, 789 F.2d 1165, 1167 (5th Cir.1986); *cf. City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). Under-inclusivity alone is not sufficient to state an equal protection claim. This ordinance was rationally related to a legitimate state objective. Hence, the moratorium by itself did not violate the equal protection clause.

Jackson Court advances a different equal protection claim when it contends that it was discriminated against unfairly in its application for a waiver. Four time-share projects had previously been exempted by the City Council from one of the earlier neighborhood moratoria. Those waivers involved time-share projects in the Faubourg Marigny district of New Orleans where an earlier separate ordinance (No. 8293) had established a time-share moratorium. Hence, while Jackson Court was the only time-share project out of five which did not get a waiver, it also was the only time-share project which applied for a waiver under the city-wide moratorium.

The City of New Orleans, pursuant to its original motion for summary judgment, submitted an affidavit from the Clerk of the New Orleans City Council in which she stated: that no more than three applicants ever applied for waivers from any time-share moratorium (with one applicant applying for a waiver for two addresses), that all of these waivers were granted under the Faubourg Marigny moratorium, and that no waivers were granted from the city-wide moratorium of Ordinance 8344 M.C.S. That affidavit and the facts it puts forward have never been challenged by Jackson Court.

---

7. This portion of the opinion reflects the views of Judge Garwood and Judge Nowlin. Judge

Williams dissents to the application of summary judgment to the second equal protection claim.

Once the city demonstrated that no waivers had been granted under the city-wide moratorium it made a *prima facie* case that Jackson Court's equal protection rights were not violated by the denial of its waiver application. It then became Jackson Court's duty, in order to avoid summary judgment, to come forward with *some* evidence to the contrary. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) ("The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.") Jackson Court did not meet this burden.

The clerk's affidavit showed that four time-share waivers were granted under *another* moratorium ordinance (Ordinance 8293) applying to a *different* part of the city than that in which Jackson Court was located (Faubourg Marigny rather than the Garden District). It was Jackson Court's obligation to offer some evidence that it was in the same class as the exempted time-shares, despite the differing ordinance and location. But Jackson Court never put the Faubourg Marigny ordinance or the transcript of the other waiver hearings before the court when opposing summary judgment. It was Jackson Court's burden to put Ordinance 8293 into evidence in order to make a *prima facie* showing that the grants of waiver under it were inconsistent with the denial of the waiver to Jackson Court under the general ordinance, 8344. By failing to do so, Jackson Court gave the trial judge (and this reviewing

Court) no basis to conclude that the different affected time-shares actually belonged to the same class. Hence Jackson Court's contention that the moratoria were applied differently to different members of the same class (of all affected time-shares) must fail.[8]

### IV. *The Taking Claim*

■ Jackson Court alleges that by establishing the moratorium and later the permanent ban on time-share developments in RM–1 and RM–2 areas the City of New Orleans effected a taking for which Jackson Court must be compensated under the eminent domain provisions of the Fifth Amendment. A taking may be shown if a zoning ordinance does not substantially advance legitimate state interests or denies an owner economically viable use of his land. *Agins v. City of Tiburon*, 447 U.S. 255, 261, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). As we have already decided, the moratorium and later prohibition certainly advanced a legitimate government interest. So the inquiry here must be limited to the second criterion; whether the ordinance sufficiently intruded upon the owner's economically viable use of his land to constitute a "taking." The Fifth Amendment prohibition against taking without compensation does not guarantee the most profitable use of property, *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 592, 82 S.Ct. 987, 989, 8 L.Ed.2d 130 (1962), and a diminution in value, standing alone, does not establish a taking. *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 131, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631 (1978). The taking issue in these contexts is resolved by focusing on the uses the regulations permit. *Id.* at 131, 98 S.Ct. at 2663.

The district court found that "[n]owhere in the Complaint or Amended Complaint does Jackson Court allege that it has been deprived of all viable economic use of its property." *Jackson Court*, 665 F.Supp. at

---

8. Accordingly, we need not reach the question of whether, or under what circumstances, a valid equal protection claim could be made out (assuming no classification involving fundamental rights or inherently suspect distinctions) had Jackson Court shown that the Faubourg Marigny district was not distinct in any relevant way and that the ordinances and waiver proceedings were likewise sufficiently similar.

1242. Jackson Court urges us to overturn the district court's grant of summary judgment to the City of New Orleans, claiming that this was an incorrect finding. The court's statement was in fact erroneous, Jackson Court in its complaint did allege total loss of the property solely as a result of the Council's action. Jackson Court did state a facially valid taking claim in its complaint. This error on the part of the district court, however, fell far short of being fatal. The district court did find that Jackson Court's claim of total deprivation was essentially an urged factual conclusion, not supported by any facts Jackson Court asserted in its pleadings.

> [I]n fact, Jackson Court alleges that the property was being utilized as an apartment building at the time of purchase and there is nothing to indicate that the property could no longer be utilized as such. Rather, Jackson Court's allegation is essentially that it was deprived of what it perceived to be the most profitable expectation of its property.

*Id.* at 1242.

In order to avoid summary judgment the party opposing the summary judgment "may not rest upon the mere allegations of his pleading ... but must set forth the specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), *quoting First-National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511. The district court found that Jackson Court failed to meet this standard. The record supports that decision.

During the earlier state district court proceeding the president of Jackson Court, Pierre Villere, stated that he was aware of the City Council's initial decision to explore limitations on time-share arrangements in May of 1981, three months prior to purchase of the property. When asked about what actions he took after he learned of the October 1981 moratorium he stated that he and his associates knew "that there would have to be other alternative uses to the property in the event that time-sharing did not turn out to be financially feasible." Jackson Court seems to rely upon the business failure while renting the property as apartments as establishing a fact question as to whether there was a taking of constitutional dimension from the viable economic use of its property. The record shows, however, that Jackson Court took a knowledgeable risk in purchasing the property and failed. It was the market, rather than the City, which deprived Jackson Court of that potential use. There is no evidence to indicate that the city's action was the sole cause of the bankruptcy. This was a typical business failure, perhaps abetted somewhat by zoning, which is not at all uncommon when risky choices are made by the business.

We have held that refusal to rezone may in limited circumstances totally deprive the owner of economic value in his property. In *Hernandez v. City of Lafayette,* 643 F.2d 1188, 1197 (5th Cir., Unit A, 1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982) we found the taking claim strong enough to avoid summary judgment because the shape, location, and encumbrances on the land made it unsuitable for residential development, for which it was then zoned. The present controversy is not at all analogous because Jackson Court's property had previously been operated as leased apartments and could still theoretically have been used as apartments or as condominums without the time-share feature.

Jackson Court also argues that two other cases support its taking claim: *Wheeler v. City of Pleasant Grove,* 664 F.2d 99 (5th Cir. Unit B Dec. 1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982) and *A.A. Profiles, Inc. v. City of Fort Lauderdale,* 850 F.2d 1483 (11th Cir. 1988). Neither is persuasive. In each of those cases a municipal body approved the projects proposed by a property owner. Subsequently, after great expenditure and reliance on the city's approval, in each case the municipality then passed an ordinance

which prohibited the property owner from pursuing the project. No such reversal of policy after a commitment occurred in the instant case.

The district court also found that Jackson Court's taking claim was premature even assuming it valid because Jackson Court had not sought compensation under state law. Under *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 194–97, 105 S.Ct. 3108, 3120–22, 87 L.Ed.2d 126 (1985) an aggrieved party is required to seek not only administrative relief before alleging a taking claim but must also first seek compensation under state law if the state has provided an adequate process for obtaining compensation. Louisiana recognizes a cause of action for such a taking without formal condemnation, i.e. "inverse condemnation." *See Reymond v. State Department of Highways,* 255 La. 425, 231 So.2d 375, 383 (1970); *Trustees of Pomeroy v. Town of Westlake,* 357 So.2d 1299 (La.App. 3rd Cir.), *cert. denied,* 359 So.2d 205 (La. 1978); La. Const. art. 1, § 4; La.Rev.Stat. Ann. § 19.102 (West 1979). *But see A.A. Profiles,* 850 F.2d at 1486–87, n. 3 (although Florida recognized inverse condemnation, the Eleventh Circuit concluded that zoning matters were entirely distinct from the availability of inverse condemnation suits in the context of the exercise of eminent domain power under Florida law). We need not and do not address this issue because the grant of summary judgment can be upheld on the basis of the facts and pleadings as not constituting a taking.

### Conclusion

We uphold the district court's summary judgment in favor of the city on Jackson Court's substantive and procedural due process claims, the equal protection claim, and the taking claim. We therefore do not examine the trial court's denial of Jackson Court's request for jury trial.

AFFIRMED.

**JERRE S. WILLIAMS,** Circuit Judge, dissenting:

While in agreement with most of the panel's opinion, I dissent on one discrete point—I believe summary judgment was inappropriate on Jackson Court's claim that its waiver denial violated equal protection *vis-a-vis* the other exempted time-shares.

The essence of equal protection is that a state must treat those similarly situated similarly. *Wilson P. Abraham Construction Corp. v. Texas Industries, Inc.,* 604 F.2d 897, 904 (5th Cir.1979), *aff'd sub. nom. Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981). Hence the initial question must be whether Jackson Court and the other time-shares were similarly situated, or put differently, were members of the same class.

The majority believes that New Orleans established a *prima facie* case that the exempted time-shares belonged in a different class because of the different locations and ordinances. They therefore believe it was Jackson Court's burden to offer rebutting evidence that it was in the same class as the exempted time-shares, which they believe Jackson Court never did. I disagree with this reasoning on three grounds. First, New Orleans never in either its original or renewed motion for summary judgment explicitly asked for summary judgment on the equal protection claim. Second, the difference in the location of the exempted time-shares from Jackson Court raises a question of fact. Such a factual finding must be made by the trial court. New Orleans did introduce the City Council's clerk's affidavit regarding the other time-shares' locations, but the trial court never addressed this issue. Hence it is irrelevant whether Jackson Court failed to produce sufficient summary judgment evidence to counter it.[1] Third,

---

1. The City of New Orleans also suggested that the moratorium applied to Faubourg Marigny (Ordinance 8293) differed materially because it involved a completely different provision for adversely affected time-share owners than that

of the city-wide moratorium here involved. Apparently the narrow ordinance under which the exemptions were granted had a "grandfather clause." Already established time-share developers could appear before the City Council,

by introducing the transcript of its waiver hearing and of various meetings surrounding the ongoing moratorium process, Jackson Court established at least *prima facie* that both sets of time-shares were in areas in which the city was concerned with neighborhood integrity. Jackson Court, therefore, may have been able to make a case that the relevant equal protection class was "time-shares in historic neighborhoods" and hence that it was similarly situated to the Faubourg Marigny time-shares but was unfairly discriminated against.

If the class for summary judgment purposes properly included the Faubourg Marigny time-shares, then the equal protection issue should be remanded because the district court applied the wrong test. The question here is *not* whether either moratorium was rational, but rather whether the ordinance was arbitrarily applied to Jackson Court (but not the others) through the reserved waiver process. The district court did not ask this question.

This claim might have some force if Jackson Court alleged that the discriminatory application was based on race, religion or national origin. *See e.g., Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). But in the absence of such allegations, this court's review of the challenged action is limited to whether the Council's denial of Jackson Court's request was rationally related to a legitimate state objective. As discussed above in the context of substantive due process, the Council's action was rationally related to the legitimate objective of preserving residential integrity. Finding no discrimination based on race, religion, or national origin, this court need look no further.

*Jackson Court,* 665 F.Supp. 1235, 1253 (E.D.La.1987).

The district court's opinion is flawed here on two grounds: 1) No justification for denial of the waiver *vis-a-vis the other time-shares* which had been given exemptions was offered by the City Council when denying Jackson Court's waiver or by the district court. The district court instead found only that there was a rational basis to deny Jackson Court's waiver, a due process issue. This is not enough under the equal protection clause because a comparison with the other time-shares is required. *Burns v. City of Des Peres,* 534 F.2d 103, 108 (8th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139, 97 S.Ct. 164 (1976). Such a comparison would require factual findings regarding the differences between Jackson Court and the exempted time-shares, which were not made. Hence summary judgment is inappropriate. 2) The district court incorrectly construed *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), which recognized equal protection violations resulting from discriminatory applications of otherwise valid statutes, as somehow *restricting* the doctrine to discrimination against suspect classes.

In a previous summary judgment case involving an equal protection claim and waiver denials between members of the same class, we held:

[I]f distinctions between similarly situated individuals are to withstand an equal protection analysis, such distinctions must be reasonable, not arbitrary, and must rest on grounds having a fair and substantial relation to the object of the legislation. *See Stanton v. Stanton,* 421 U.S. 7, 14, 95 S.Ct. 1373, 1377–78, 43 L.Ed.2d 688 (1975); *cf. International Association of Firefighters, etc. v. City of*

---

state that they were established, and would be excused from the moratorium's provisions. The moratorium ordinance here involved, however, calls for an appeal before the City Council, at which the Council could waive the moratorium provisions upon a showing that the "party ... would experience undue hardship and that the character of the neighborhood involved would not be adversely affected." New Orleans' argument is that these waiver provisions are not similar enough for the previous four time-share

projects to be considered in the same class as Jackson Court.

A careful search of the record reveals no copy of Ordinance 8293, and no transcript of the proceedings of the City Council regarding these waivers. Hence, we do not have the means to compare these with Jackson Court's waiver. New Orleans appears to be assuming answers to factual and legal issues not considered by the district court.

*Sylacauga, AL,* 436 F.Supp. 482, 488 (N.D.Ala.1977).

*Zeigler v. Jackson,* 638 F.2d 776, 779 (5th Cir.1981). The Alabama statute in *Zeigler* required that a peace officer not have a past record of conviction of a felony or of a misdemeanor involving force, violence, or moral turpitude. Zeigler was discharged by the Adamsville Police Department because he was found to have been convicted of two misdemeanors which did involve force, violence, or moral turpitude. The state commission, however, had waived the requirement for at least three other persons who had been convicted of similar but more serious crimes.

We reversed the district court's summary judgment for the defendant, finding that Zeigler had stated an equal protection claim which deserved a trial on the merits. In doing so, we found that the commission failed to offer a rational justification for the different treatment accorded to Zeigler.[2] The opinion further cited with approval a federal district court holding that "[w]here waivers of a rule are not granted with consistency and no explanation is given for the disparity of treatment, a finding of denial of equal protection may be appropriate." *Id.* at 779–80, *quoting Louis v. Supreme Court of Nevada,* 490 F.Supp. 1174, 1183 (D.Nev.1980). *See also Bennett v. City of Slidell,* 697 F.2d 657, (5th Cir.1983), *rev'd in part on other grounds,* 728 F.2d 762 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

The majority argues that in order to avoid summary judgment on an equal protection claim, it is Jackson Court's obligation to demonstrate prima facie an infringement of a constitutional right or use of a suspect classification. The law does not go so far. While the circumstances in *Zeigler* smacked of racial discrimination, we did not require a specific showing of such discrimination to establish a *prima facie* case. Similarly, in *Bennett* the facts showed an obvious discriminatory intent. Issuance of occupancy permits was routine. Bennett's prominent neighbor Coerver however sought to block Bennett's proposed use of his property. After receiving letters from Coerver the city began to delay issuance of Bennett's occupancy permit. *See* Sec. II. B. *supra.* The court stated, however, as its rationale for finding an equal protection violation: *"[f]or whatever reason,* be it political influence of Coerver or some other motive, Dugas singled out Bennett's occupancy application for strictissimi application of Slidell's zoning ordinance . . . ." *Bennett* at 661 (emphasis added).

The critical point is that it is the inconsistency of treatment which establishes a *prima facie* equal protection claim. A prima facie showing of evil motive is not required. *See also Cordeco Development Corp. v. Santiago Vasquez,* 539 F.2d 256, 260 n. 5 (1st Cir.), *cert. denied,* 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976) and cases collected therein (arbitrary refusal to process a permit for sand extraction for political or personal motives stated an equal protection claim); *cf. Scott v. Greenville County,* 716 F.2d 1409, 1419–20 (4th Cir.1983) (due process claim analogous to equal protection claim made out sufficiently to avoid summary judgment when developer alleged arbitrary denial of permit for low-income housing, even in absence of class-based or invidious discrimination).

It may be that Jackson Court has little chance of victory on the merits. It established a *prima facie* case, however, that could not be rebutted without some factual findings with which to make a comparison. These necessary factual findings were blocked by the trial court's summary judgment. Hence, the law requires that Jackson Court have the opportunity to make its

---

**2.** The record reflected that the two criminal charges which caused Zeigler's dismissal may have been racially motivated. The deputy who brought the charges against Zeigler was white; Zeigler was black. That deputy was subsequently discharged from the force on brutality charges. The judge who convicted Zeigler wrote a laudatory letter in support of him and offered to testify on his behalf. Nevertheless, the Fifth Circuit did not rely on a finding of racial motivation when we found Zeigler had a facially valid equal protection claim. The opinion merely held that the application of the statute had been arbitrary.

case through adjudication on the merits as to this one constitutional issue. This opportunity, required by law, occasions this dissent as to the summary judgment denying the equal protection claim.