**BRIAN B. BROWN CONSTR. CO.**

v.

**ST. TAMMANY PARISH, et al.**

**Civil Action No. 97–2011.**

United States District Court,
E.D. Louisiana.

July 13, 1998.

---

### *ORDER AND REASONS*

FALLON, District Judge.

Before the Court is the motion for summary judgment filed by intervenor Hidden Springs Homeowner's Association ("Hidden Springs"), and adopted by the Parish of St. Tammany ("Parish") and by intervenors Kings Forest Homeowner's Association, Inc. ("King's Forest") and Riverwood Improvement Association, Inc. ("Riverwood").[1] Because the Court finds that plaintiff suffered no deprivation of any rights protected by 42 U.S.C. § 1983 or § 1985, the motion of summary judgment is GRANTED.

### I. BACKGROUND

The case revolves around the unsuccessful attempt by plaintiff to win approval from the Parish for its plan to develop its property. The property was part of two plated subdivisions recorded in Parish records in 1910 and 1914. These plats both contained numerous lots measuring 30 feet by 140 feet. In January 1997, plaintiff acquired the property through three cash sales and submitted a plan to develop the property. The Parish Department of Development decided that the property would be processed under dormant subdivision review, Section § 40–081.0 of Parish Subdivision Ordinance 499 (hereinafter "the Ordinance"). Plaintiff submitted its

---

**1.** In the alternative, St. Tammany moves for a Rule 12(b)(6) dismissal for failure to state a claim. St. Tammany gave no explanation or support for its motion, and the Court finds no argument that could justify dismissal on the pleadings. Therefore, St. Tammany's motion to dismiss is DENIED.

plan for tentative approval in February 1997. The Parish held an informational meeting on March 6, 1997, and another meeting on March 11, 1997.[2] On April 8, 1997, the Parish Planning Commission voted unanimously to deny the tentative subdivision request. On April 17, 1997, the Parish Police Jury voted unanimously to uphold the denial.

Plaintiff filed a claim in federal court. Plaintiff's first cause of action is that the Parish's acts and omissions constitute a violation of the substantive due process, equal protection, and takings clauses of the Fifth and Fourteenth Amendments. Plaintiff also asserts that, even if the choice of dormant subdivision review was correct, the Parish's review of its proposal amounted to a denial of its procedural due process rights, both for lack of ascertainable standards and because a Police Juror allegedly prejudged plaintiff's application. In addition to these 42 U.S.C. § 1983 claims, plaintiff asserts a second cause of action, that an unnamed Jane Doe conspired with Parish officials to violate plaintiff's rights. Plaintiff seeks a declaration that its property ought not to be subject to the dormant subdivision review, that the dormant subdivision review and minimum lot size requirements are unconstitutional, and that the Parish violated plaintiff's substantive due process and equal protection rights. Plaintiff also asks for compensatory relief and that the Parish be permanently enjoined from enforcing the minimum lot size requirements and dormant subdivision review provisions against plaintiff. The Court will analyze each claim in turn.

## II. ANALYSIS

### 1. Substantive Due Process

Plaintiff first contends that the Parish should not have required it to apply under the dormant subdivision requirements, when the property had been improved and should not therefore have been considered a dormant subdivision. Compl. ¶ 9–14. Second, even if the choice of requirements was correct, plaintiff contends that the requirements

were applied in a way that denied plaintiff its substantive due process rights.

Plaintiff can not show that the Parish violated its substantive due process rights. "An attack against a zoning decision can succeed only with a showing that the legislative facts on which the classification is apparently based *could not* reasonably be conceived to be true by the governmental decisionmaker." *Texas Manufactured Housing Assoc., Inc. v. City of Nederland,* 101 F.3d 1095, 1106 (5th Cir.1996) (italics added) (citation omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). Substantive due process is not offended unless "the challenged legislation is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id.* (internal and external citations omitted). Even if plaintiff is correct that the property should not have been subject to the minimum lot sizes of A–4 zoning, but instead zoned "suburban agricultural with existing lots of record," Pla.'s Opp. at 4, or that its application was merely a tentative, conceptual plan, or that there was no zoning shortcoming, or that the Parish made other errors in connection with plaintiff's application, plaintiff does not have a claim for a violation of its substantive due process rights.

The "due process clause does not require a state to implement its own law correctly, nor does the Constitution insist that a local government be right." *FM Properties Operating Company v. City of Austin,* 93 F.3d 167, 174 (5th Cir.1996) (external and internal citations omitted). The "power to decide," is the power "to be wrong as well as right on contestable issues." *Id.* In this regard, a federal court's review of zoning decisions is "quite different from the review to which they may be subjected by state courts." *Shelton v. City of College Station,* 780 F.2d 475, 482–83 (5th Cir.1986). A "violation of state law is alone insufficient to state a constitutional claim under the Fourteenth Amendment," for converting "alleged violations of state law into federal ... due

2. Plaintiff contests that this second meeting was informational, but not that there was a second meeting.

process claims improperly bootstraps state law into the Constitution." *FM Properties,* 93 F.3d at 174. Plaintiff's charges, even if cognizable by a state court, do not rise to the level of a substantive due process violation cognizable by this Court.

### 2. Procedural Due Process

■ According to plaintiff, the "lack of procedural due process in the case at bar arose at the April 17, 1997 meeting, when Police Juror Kerry Harwell refused to hear [plaintiff's original counsel's] new plan and said he had already made up his mind." Pla.'s Opp. at 18. In this Circuit, "where a zoning decision has been made by an elected body . . . we have characterized the action as legislative or 'quasi-legislative' negating procedural due process claims." *Jackson Court Condominiums, Inc. v. City of New Orleans,* 874 F.2d 1070, 1074 (5th Cir.1989). There is, however, some precedent that when a zoning board makes a "specific decision regarding a specific piece of property," the action "may be more likely termed adjudicative." *County Line Joint Venture v. City of Grand Prairie, Texas,* 839 F.2d 1142, 1144 (5th Cir.1988). Later Circuit precedent seems to refute this, finding that "this court has remained on the legislative track when turning to . . . a specific zoning decision." *Shelton,* 780 F.2d at 480. However, even accepting that the "circumstances may arise in which the zoning decision of a governmental body, such as a county commission . . . may require some procedural due process," *Jackson Court,* 874 F.2d at 1074 n. 3, the Court's review of the evidence in this case assures it that no violation of plaintiff's procedural due process rights has occurred.

According to Harwell, he told plaintiff's original counsel that counsel "was wasting his time unless he came up with another proposal . . . ." Harwell Dep. at 105. However, it is not disputed that counsel was allowed to speak and to present his plan. Harwell testified that "after hearing everybody I voted to deny it." *Id.* at 107. Even if Harwell had already made up his mind, "a decisionmaker is not disqualified simply because he has taken a position, even in public, on a policy issue . . . in the absence of a showing that he is not capable of judging a particular controversy fairly on the basis of its own circumstances." *Jackson Court,* 874 F.2d at 1077 (internal and external citations omitted). In this case, as in *Jackson Court,* there is nothing, such as some personal or financial stake, which "indicates that [the public official] was not capable of judging the particular controversy on the basis of its own circumstances." *Id.* Plaintiff has shown no evidence that would allow a reasonable jury to find that its procedural due process rights have been violated.

### 3. Equal Protection

■ Plaintiff makes two equal protection claims. First, plaintiff states that it was treated less favorably than similarly situated developers, specifically that other developers were not required to meet the minimum lot size requirements. Second, it claims that the minimum lot size requirements discriminate against would be low-income and minority purchasers. Plaintiff's claims, however, fall far short of what would be required to maintain an equal protection claim.

Other than submitting maps of other approved subdivisions showing lots less than 90 feet by 140 feet and statements that these developer's projects were substantially similar, there is no evidence in the record showing that the entire factual scenarios surrounding these other developments was in fact substantially similar to plaintiff's intended development. To the extent that there is some similarity, such a distinctions in treatment certainly passes the rationality review utilized for analyzing a zoning classification in the absence of some inherently suspect distinction. *Jackson Court,* 874 F.2d at 1079. Plaintiff does raise the specter of racial bias, but not in regard to itself or its employees, only in relation to the potential purchasers of its intended development.

As to whether the discriminatory effects of the minimum lot size requirement on purchasers could violate equal protection, the Court notes that "smaller lot sizes . . . affect population density, and the County unquestionably has a right to control the orderly development of the community by regulating density." *Clark v. County of Winnebago,*

817 F.2d 407, 408 (7th Cir.1987). Plaintiff's strongest evidence of any racial or even class-based animus influencing the Commission or Police Jurors' decisions is a note apparently handed out at public meeting by a citizen that says "LET'S LEAVE OR-LEANS PARISH ON THE SOUTH SHORE." From this and mere conclusory allegations about what must have motivated the Commission or Police Jurors, plaintiff attempts to impugn the Parish's decisions. Such an attempt must fail. In addition, plaintiff faces an internal contradiction, claiming that the Parish allowed other developers to develop smaller lots while asserting that the Parish has a racial or class-based bias against allowing these smaller lots.

### 4. Taking

Plaintiff also asserts that, under the test elucidated in *Lucas v. South Carolina Coastal Council*, it has been denied all economically beneficial uses of its property, leaving the property economically idle. 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Plaintiff wisely chooses not to claim that merely being required to build its lot to minimum size requirements could constitute a taking of its property. Instead, plaintiff argues that the controversial nature of the project and "moblike" resistance of local residents to the project, as well as the lack of definite standards, has "taken this property out of commerce." Pla.'s Opp. at 19.

■ Plaintiff faces several insurmountable hurdles. First, after the rulings of the Commission and the Police Jury, plaintiff made sales involving the property of $375,000 to the Helenbirg Land Company, L.L.C. ("Helenbirg") and $100,000 to Eric Wendell. Plaintiff asserts that as it controlled Helenbirg, this sale was not at arm's length. Plaintiff also counters that the sale to Wendell was based on Wendell's misperception that the matter would be resolved, and was an "investment for development purposes and for the future development of the property." Pla.'s Stat. of Mat. Facts at ¶ 13. While plaintiff may raise a question as to the validity of the Helenbirg sale, plaintiff's sale to an outside investor would appear to negate any claim that it has been denied all economically beneficial uses of its property.[3] Even putting aside the Wendell sale, plaintiff has shown no evidence that the resistance of local residents to the project—which plaintiff asserts were based largely on lot size—and the lack of definite standards has taken this property out of commerce, or how such a claim could possibly be ripe for determination at this point.

### 5. Conspiracy (42 U.S.C. § 1985)

Plaintiff's complaint asserted that a certain Jane Doe conspired with Parish officials to violate plaintiff's rights. While plaintiff has not formally conceded this cause of action, it has submitted no evidence of any such conspiracy and indeed, has chosen not to discuss any alleged conspiracy in its opposition memorandum. With no evidence of any conspiracy in the record, this claim must be dismissed.

### 6. Constitutionality of the Very Statutes at Issue

Even if plaintiff has no civil rights claim for its treatment by the Parish and others in this case, plaintiff contends that the Court should strike down two of the section of the Ordinance under which its application was reviewed. Plaintiff requests that the minimum lot size requirements should be struck down as a denial of equal protection and that the Dormant Subdivision Review section be struck down as unconstitutional for failure to contain ascertainable standards.

■ The Contiguous Lot Rule requires that an owner "combine contiguous residential substandard lots of record ... in order to conform as closely as possible with the A–4 Single Family Residential zoning district lot area and width standards." Ordinance No. 499 § 40–034.01. "Substandard lots of record" are defined as "less than fifty (50) feet of street frontage ... and created prior to May 1, 1971." As discussed above, "smaller lot sizes ... affect population density, and the County unquestionably has a right to control the orderly development of the community by regulating density." *Clark*, 817

---

**3.** Any such claim would appear to be Wendell's, not plaintiff's.

F.2d at 408. Plaintiff has provided no basis by which the Court could find this section of the Ordinance unconstitutional.

■ The Dormant Subdivision Review section is potentially more troubling. Plaintiff argues that reserving to the Planning Commission "the right to impose certain requirements ... with regard to the health, safety and general welfare of the public," Ordinance No. 499 § 40–081.0, left the Council with unbridled discretion and left plaintiff with little guidance to know what was required of it. The Court finds that the challenged sections are in fact constitutional. First, the section "must be read in the context of the entire ordinance," *Turning Point, Inc. v. City of Caldwell,* 74 F.3d 941, 944 (9th Cir.1996), in this case the Ordinance. Here the disputed section was read in connection with at least those portions of the Ordinance relating to A–4 Single Family Residential housing.[4] When read in this context of the entire Ordinance, the section provided "standards sufficient to channel the Council's discretion." *Horizon Concepts, Inc. v. City of Balch Springs,* 789 F.2d 1165, 1168 (5th Cir. 1986) (Wisdom, J.). Second, a regulation is not unconstitutionally vague where a "regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry or by result to an administrative process." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). As discussed above, while the Parish may have been incorrect in applying the A–4 minimum area requirements, by the time of the meeting, as plaintiff argues, lot size was the paramount concern. Thus, while plaintiff may disagree with the requirements imposed, there was sufficient clarity to avoid any constitutional violation. The Court is unable to strike down the ordinance as unconstitutional.

## III. CONCLUSION

For the foregoing reasons, the Parish's motion for dismissal is DENIED, and the motion for summary judgment filed by Hid-den Springs and adopted by King's Forest, Riverwood, and the Parish of St. Tammany is GRANTED, with prejudice and with costs.

4. Again, plaintiff insists that A–4 requirements *should not have been applied to its development.* Whether the Parish should have applied these requirements is discussed above in the substantive due process analysis.