## Clyde P. HERRINGTON

v.

## CITY OF PEARL, MISSISSIPPI.

### Civ. A. No. 3:90–CV–289WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 31, 1995.

Opinion and Order Releasing Grand Jury Transcripts).

Lemuel G. Adams, III, Frank D. Edens, Sr., Adams & Edens, Brandon, MS, for Clyde P. Herrington.

Gary E. Friedman, David M. Thomas, II, Phelps Dunbar, Jackson, MS, for City of Pearl, MS.

Frank D. Edens, Sr., Adams & Edens, Brandon, MS, for Tina Herrington.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of the defendant City of Pearl, Mississippi (hereinafter "the City"), for summary judgment pursuant to Rule 56(b) [1] of the Federal Rules of Civil Procedure. The plaintiff, Clyde P. Herrington (hereinafter "Herrington"), brought this civil action asserting a violation of his constitutional rights which Herrington contends is actionable under Title 42 U.S.C. § 1983.[2] Jurisdiction is based on federal question and original jurisdiction, 28 U.S.C. §§ 1331 [3] and 1443.[4]

Herrington complains of a 1989 moratorium enacted by the City which prohibited new mobile home sales establishments from being located within the Pearl city limits. When originally filed on June 5, 1990, Herrington's complaint sought injunctive relief which would permit him to place mobile home sales establishments on each of two parcels of property he owned which are located within the Pearl city limits, two parcels known as the "Skyway Hills" property and the "Bates" property. Additionally, Herrington sought $250,000.00 in compensatory damages and $1,000,000.00 in punitive damages.

In March of 1991, the City granted Herrington a license to place a new mobile home establishment on each parcel of property in question. Notwithstanding this action by the City, Herrington still claims that he is entitled to compensatory and punitive damages from the City for losses suffered during the period of the moratorium imposed by the City in 1989, in addition to any damages arising from the alleged violation of Herrington's constitutional rights resulting from the imposition of the 1989 moratorium.

## PERTINENT FACTS

Herrington's complaint says that on March 7, 1989, the City of Pearl enacted an unlawful two-year moratorium on locating new mobile home sales establishments within its boundaries and that this moratorium deprived Herrington of the lawful use of his property while serving no public purpose. The City

---

1. Rule 56(b) of the Federal Rules of Civil Procedure provides:

   (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Title 42 U.S.C. § 1983 provides in pertinent part:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. Title 28 U.S.C. § 1331 provides as follows:

   The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States.

4. Title 28 U.S.C. § 1343(a)(3) provides:

   (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

responds that on April 27, 1987, the City passed a moratorium prohibiting new mobile home sales establishments from locating within the city limits of Pearl, Mississippi. The City says that it passed this moratorium in an effort to overcome what it perceived to be its negative image arising from its unwanted reputation as the "Home–of–the–Double–Wides" and the "Mobile Home Sales Capitol." Concerned with increasing numbers of mobile home sales establishments within its boundaries, the City says it enacted the moratorium as a temporary measure in hope of encouraging other forms of commerce and enhancing property value.

According to the City, Herrington's mobile home sales establishments located on each of the two parcels in question were "grandfathered" by the 1987 moratorium. However, says the City, both of these mobile home sales establishments either went out of business or relocated outside the Pearl city limits after the 1987 moratorium was enacted. On March 7, 1989, the City says it extended its 1987 moratorium for two more years. According to the City, the 1989 extension contained a feature not included in the 1987 moratorium—it permitted pre-existing mobile home sales establishments already within the Pearl city limits at the time of the 1989 moratorium extension to relocate within the city limits. However, notes the City, the moratorium retained its ban on the location of new mobile home sales establishments within the Pearl city limits.

The dispute with Herrington, says the City, arose during or shortly after October of 1989 when Herrington attempted to obtain permits to locate two new mobile home establishments on the two parcels in question while the 1989 moratorium was in effect.

The City says it denied Herrington's request because he was not relocating a pre-existing mobile home sales business already within the Pearl city limits when the 1989 moratorium was enacted. Instead, says the City, Herrington was planning to locate two new establishments on the two parcels of property in question, and this was prohibited by the 1989 moratorium. Herrington says he requested the licenses to begin new mobile home sales sites on property where mobile home sales companies had previously operated. According to Herrington, the Pearl Planning Board approved his request; however, the Mayor and Board of Aldermen overruled the Planning Board and denied Herrington's request because of the moratorium. Herrington objected to the action taken by the Mayor and Board of Aldermen, arguing that the moratorium was invalid. Nevertheless, says Herrington, he was told by the Mayor and Board of Aldermen that he would have to file a lawsuit in order to prove his claim that the 1989 moratorium was invalid.

Herrington filed this complaint on June 5, 1990, pursuant to 42 U.S.C. § 1983, claiming that he was being deprived of constitutional rights guaranteed under the Fifth [5] and Fourteenth [6] Amendments of the United States Constitution and Section 14 [7] of the Mississippi Constitution, and that said deprivation was being perpetrated under color of state law. Herrington's complaint claims that the City refused to lift its moratorium at the plaintiff's request; that the City violated its own moratorium; that the City officials knowingly enforced an invalidly enacted ordinance at plaintiff's expense; [8] that the moratorium was arbitrary, capricious, unlawfully enacted and imposed without following state

5. The Fifth Amendment to the United States Constitution provides in pertinent part:
   No person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

6. The Fourteenth Amendment to the United States Constitution provides in pertinent part:
   No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

7. Article 3, Section 14 of the Constitution of the State of Mississippi provides:
   No person shall be deprived of life, liberty or property except by due process of law.

8. According to Herrington's brief in opposition to the City's motion for summary judgment, the City sought a legal opinion on the 1989 moratorium from its attorney and was told that the 1989 moratorium was constitutionally invalid because a public hearing pertaining to its adoption was not held.

law; that the moratorium constituted a "taking" of Herrington's property that invaded Herrington's expectations for the investment use of the property; and that the moratorium served no public purpose.

The City has moved for summary judgment asserting that the plaintiff's claims were not ripe for consideration by this court as a § 1983 action; that Herrington has asserted no viable Fifth Amendment claim; that there has been no "taking" of Herrington's property which is cognizable under the United States Constitution; that there has been no denial of due process or equal protection; that the plaintiff's pendent state law claims should be dismissed; and that there is no basis for an award of punitive damages in this case.

This court has reviewed the parties' briefs and exhibits in support of their respective positions, has heard the arguments of counsel, finds the City's motion to be well taken, and directs that the City's motion for summary judgment should be granted for the following reasons.

### THE MOTION FOR SUMMARY JUDGMENT

#### a. *The Matter of Ripeness*

█ The City raises the question of whether this matter is ripe for adjudication under 42 U.S.C. § 1983 based on Herrington's claims of "taking" or deprivation of property in violation of his constitutional rights under either the Fifth or Fourteenth Amendments when there is no showing that Herrington has been denied just compensation and no showing that a final determination on this matter has been reached. The City contends that Herrington did not seek compensation in state court for any alleged "taking" of his property by the filing of an inverse condemnation suit in state court pursuant to Section 17 [9] of the Constitution of the State of Mississippi, nor did he appeal the decision of the Mayor and Board of Aldermen pursuant to Miss.Code Ann. § 11-51-75 which provides:

> Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities. The clerk thereof shall transmit the bill of exceptions to the circuit court at once, and the court shall ... hear and determine the same ... as an appellate court, and shall affirm or reverse the judgment.

Thus, says the City, federal court is an improper forum for this dispute.

The City additionally contends that Herrington's lawsuit in this court does not challenge any physical appropriation of Herrington's property but, instead, challenges the City's regulation of land use within its boundaries, a matter uniquely within the domain of the states, their agencies, and judiciaries, which should seldom be the concern of a federal court. *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir.), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986), and *cert. denied, College Station v. Shelton*, 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986); *Stern v. Tarrant County Hospital District*, 778 F.2d 1052 (5th Cir.), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1985). So, says the City, if there has been any unjust "taking" of Herrington's property, he should have pursued state remedies. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Smith v. City of Brenham, Texas*, 865 F.2d 662 (5th Cir.), *cert. denied*, 493 U.S. 813, 110 S.Ct. 60, 107 L.Ed.2d 27 (1989). These remedies were

---

**9.** Section 17 of the Mississippi Constitution provides:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

either (1) to appeal pursuant to Miss.Code Ann. § 11–51–75 above cited, or (2) to file a lawsuit for inverse condemnation in state court. *Gilich v. Mississippi State Highway Commission,* 574 So.2d 8 (Miss.1990); *City of Gulfport v. Anderson,* 554 So.2d 873 (Miss. 1989).

Herrington responds that the state court remedy of inverse condemnation may be inadequate; that exhaustion of any state court remedies is not required prior to bringing a lawsuit pursuant to § 1983, citing *Williamson County Regional Planning Commission v. Hamilton Bank,* at 473 U.S. 172, 191, 105 S.Ct. 3108, 3119; that exhaustion of administrative proceedings is not required when substantive due process and equal protection are the issue, citing *Herrington v. County of Sonoma,* 834 F.2d 1488 (9th Cir.1987); and that the state has no law which can afford the same relief as § 1983 (nominal damages plus attorney fees pursuant to § 1988). Herrington admits that he never sought compensation through an inverse condemnation proceeding under state law for the purported loss of use of his property and that he did not pursue an appeal of the decision of the Mayor and Board of Aldermen in accordance with Miss.Code Ann. § 11–51–75.

Herrington's reliance on the case of *Williamson County Regional Planning v. Hamilton Bank* is misplaced. This case involved a lawsuit for the taking of property without just compensation brought pursuant to 42 U.S.C. § 1983. However, as in the case *sub judice,* the plaintiff in *Williamson County* made no effort to seek compensation in accordance with state law prior to filing a § 1983 lawsuit in federal court. The United States Supreme Court found the plaintiff's claim not yet ripe for consideration under § 1983, stating:

> The Fifth Amendment does not proscribe taking of property; it proscribes taking without just compensation. [citation omitted] ... because the Fifth Amendment proscribes takings *without just compensation* (emphasis in original), no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for ob-

taining compensation before bringing a § 1983 action.

*Id.,* 473 U.S. at 193, fn. 13, 105 S.Ct. at 3120, fn. 13.

Herrington views the matter of bringing an inverse condemnation lawsuit or appealing the decision of the Mayor and Board of Aldermen to Rankin County Circuit Court as an exhaustion requirement and contends that administrative claims need not be exhausted prior to bringing a § 1983 action in federal court. *See Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 502, 102 S.Ct. 2557, 2561, 73 L.Ed.2d 172 (1982). However, the question before this court is one of finality, not exhaustion. As noted in *Williamson County Regional Planning v. Hamilton Bank,* distinguishing *Patsy,* the question whether administrative remedies must be exhausted is conceptually distinct from the question whether an administrative action must be final before it is judicially reviewable. *Williamson County Regional Planning v. Hamilton Bank,* 473 U.S. at 191, 105 S.Ct. at 3119, citing *FTC v. Standard Oil Co.,* 449 U.S. 232, 243, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980). Hence, while the policies underlying these concepts often overlap, the finality requirement is concerned with whether the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual concrete injury. The exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful. *Patsy* concerned the latter, not the former. *Williamson County Regional Planning v. Hamilton Bank,* 473 U.S. at 193, 105 S.Ct. at 3120. In the latter situation, the injury has been established, while in the former the injury, if any, has not yet been finally established.

"Where a State provides an adequate procedure for seeking just compensation, the property owner cannot claim violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.,* 473 U.S. at 195, 105 S.Ct. at 3121; *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 311 fn. 6, 107 S.Ct. 2378, 2384 fn. 6, 96

L.Ed.2d 250 (1987). It is the nature of the Fifth Amendment right to just compensation that one first seek compensation under the process provided before bringing a lawsuit under 42 U.S.C. § 1983. It is the denial of compensation, not the taking of the property, that triggers the constitutional right. Herrington has not shown this court that an inverse condemnation lawsuit is unavailable or inadequate. Herrington's unsubstantiated concern that the procedure would be inadequate is unpersuasive because it is merely speculative.

■ Finally, a claim that the application of government regulations affects a taking of property interest is not ripe until the government entity charged with implementing the regulation has reached a final decision regarding the application of the regulations of the property at issue. *Williamson County Regional Planning v. Hamilton Bank,* 473 U.S. at 185, 105 S.Ct. at 3116 (due process challenge to finding of Zoning Commission premature where plaintiff did not first seek variance through the Board of Zoning Appeals). The decision of the Mayor and Board of Aldermen was reviewable by the Rankin County Circuit Court pursuant to Miss.Code Ann. § 11–51–75. Herrington did not pursue this route of appeal prior to bringing this § 1983 cause of action. Thus, Herrington is in a posture congruent with that of the plaintiff-respondents in *Williamson County* where there was no showing that the plaintiff-respondents sought variance relief from the Board of Zoning Appeals prior to filing their § 1983 complaint in federal court.

Therefore, in view of the foregoing authority, this court finds that Herrington's § 1983 claim is not ripe for consideration.

### b. *The Fifth Amendment Claim and Taking Without Compensation*

■ "The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Central Transportation Company v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978), citing *Armstrong v.*

*United States,* 364 U.S. 40, 48, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). However, there is no set formula for determining when "justice and fairness" require that economic injuries caused by public action should be compensated by the government. *Id.,* 438 U.S. at 123, 98 S.Ct. at 2659, citing *Goldblatt v. Hempstead,* 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962). The ad hoc inquiries conducted by the United States Supreme Court have identified certain factors such as the economic impact on the claimant and the extent to which the regulation has interfered with distinct investment-backed expectations which are significant to the determination of whether there has been a taking. Also significant is the character of the government action in question. A taking may be more readily found when the interference can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good. *Id.* 438 U.S. at 123, 98 S.Ct. at 2659, citing *Goldblatt v. Hempstead,* 369 U.S. at 594, 82 S.Ct. at 990, and *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). "Under our system of government, one of the State's primary ways of preserving the public weal is restricting the uses individuals can make of their property. While each of us is burdened somewhat by such restrictions, we, in turn, benefit greatly from the restrictions that are placed on others." *Keystone Bituminous Coal Association v. DeBenedictis,* 480 U.S. 470, 490, 107 S.Ct. 1232, 1245, 94 L.Ed.2d 472 (1987). "These restrictions are 'properly treated as the burden of common citizenship.'" *Id.,* 480 U.S. at 490, 107 S.Ct. at 1245, citing *Kimball Laundry Company v. United States,* 338 U.S. 1, 4, 69 S.Ct. 1434, 1437, 93 L.Ed. 1765 (1949).

■ In the instant case, the City contends that Herrington has not alleged a "taking" cognizable under the United States Constitution. According to the City, its 1989 moratorium was narrowly drawn; the decision of the Mayor and Board of Aldermen did not deprive Herrington of all beneficial use of his property; and Herrington admitted in his deposition that the value of the two parcels of

property in question had increased substantially according to recent appraisals, notwithstanding the implementation of the City's moratorium (see the deposition of Clyde P. Herrington, pages 44–45).[10] However, even if there had been diminution in the value of the two parcels in question, argues the City, diminution in value standing alone does not establish a taking, especially where the regulation is related to the promotion of the general welfare. *Penn Central Transportation Company v. City of New York*, 438 U.S. 104, 131, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631 (1978), *reh. denied*, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978), citing *Euclid v. Ambler Realty Company*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

Furthermore, says the City, while the 1989 moratorium was in effect, the plaintiff was restricted only from placing mobile home sales establishments on the two parcels in question. Otherwise, argues the City, he had a whole "bundle" of rights available to him and, "[w]here an owner possesses a full 'bundle' of rights, the destruction of one 'strand' of the bundle is not a taking because the aggregate must be viewed in its entirety." *Keystone Bituminous Coal Association*, 480 U.S. at 496, 107 S.Ct. at 1248.

Herrington responds that the City's moratorium barred a known use of the property in question. In other words, Herrington contends that he was not permitted to use his land for the purpose which it was already being used when the moratorium went into effect. However, it is undisputed that the mobile home establishments leasing Herrington's property and "grandfathered" under the City's 1987 moratorium were not in existence or had moved out of the city limits when the City enacted its 1989 moratorium. It was only after the enactment of the 1989 moratorium that Herrington sought to place two new mobile home sales establishments on the property in question. There is nothing in this assertion on which to base a Fifth Amendment claim under § 1983.

Next, citing *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), Herrington characterizes the City's action as a temporary taking of all his property which requires compensation. In *First English*, the County of Los Angeles, California, imposed an interim ordinance banning all construction in a flood ravaged area known as Mill Creek Canyon where the plaintiff's property was located. No improvement of any sort could take place, nor could any previously existing structures be rebuilt. The United States Supreme Court held, among other things, that this temporary taking of all use of a property was a compensable taking. However, the broad reach of the Los Angeles County ordinance far exceeds the range of the moratorium before this court.

This court is unpersuaded that the City's 1989 moratorium constitutes a temporary taking of all use of Herrington's two parcels. Herrington's contention in this regard is based on his belief expressed in his deposition that the best use for his property was for "ground-leasing." Ground-leasing means renting an unimproved or surfaced lot as opposed to a lot with a building. Herrington says that such leasing to mobile home sales companies produced a lot of income without requiring Herrington to incur the costs of fire insurance, property taxes on improvements, or such other expenses as one would incur if buildings were placed on the property. (Deposition of Clyde P. Herrington, pages 33–37). However, Herrington conceded in his deposition there were other uses for his two properties, even if he did not find them as attractive for investment purposes as a ground-lease for a mobile home sales establishment.

Moreover, even if the City's decision constituted a taking, Herrington failed to avail himself of either an inverse condemnation lawsuit or an appeal to the Rankin County Circuit Court. Therefore, this court finds no basis for Herrington's Fifth Amendment claim under § 1983.

10. On page 30 of Herrington's deposition he acknowledges that he paid $250,000.00 for the "Bates" property which was appraised to have a value of $825,000.00 in 1990. Herrington said he could not recall what he paid for the "Skyway Hills" parcel, but it was appraised to have a value of $750,000.00 at the time Herrington's deposition was taken on March 5, 1991.

### c. The Due Process Claims—Substantive and Procedural

#### 1. Substantive Due Process

■ Where it can be shown that a moratorium such as the one in question involved a legitimate concern of the City and was debatable, the moratorium will be found to meet the threshold of substantive due process. *Jackson Court Condominiums, Inc. v. City of New Orleans,* 874 F.2d 1070, 1078 (5th Cir.1989) (city's concern that permitting more time-share housing on waterfront might lead to vandalism and littering sometimes associated with transient housing expressed a rational basis for denying permits), citing *Shelton v. City of College Station,* 780 F.2d 475, 482 (5th Cir.1986) (city's concern that new restaurant in area near college would worsen the existing traffic control and parking problem in the area was at least debatable and met the threshold for substantive due process). *See Metropolitan Life Insurance Company v. Ward,* 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) (5–4 decision did not decide the rational basis question, but held that a rational basis or rational relationship could be established where the goal or purpose of the enactment was at least debatable). Furthermore, a legislative purpose may be hypothesized, and the City need not prove its legislative purpose as a historical fact. *Shelton v. City of College Station,* 780 F.2d at 484.

■ Herrington argues that the enactment of the 1989 moratorium by the City violated his right to substantive due process because it was arbitrary and capricious and was enacted without any established public purpose. According to Herrington, the assertion that the moratorium would enhance economic growth in Pearl, Mississippi, is without factual basis. Furthermore, says Herrington, discrimination against mobile home sales establishments bears no relationship to public health, safety, or welfare and constitutes a taking, citing *Wheeler v. City of Pleasant Grove,* 664 F.2d 99 (5th Cir.1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982).

This court has considered Herrington's arguments on this point and finds them conclusory and unpersuasive. In *Wheeler,* the City of Pleasant Grove issued the plaintiff a building permit to construct an apartment complex. This action was followed by a public outcry against the apartments. The City of Pleasant Grove promptly enacted an ordinance prohibiting the plaintiff from proceeding with construction. The Fifth Circuit saw the enactment of the ordinance as an attempt to revoke an already authorized building permit. The City's action, said the Fifth Circuit, was confiscatory in nature and constituted an arbitrary, irrational zoning standard. *Wheeler v. City of Pleasant Grove,* at 100.

In *Jackson Court Condominiums v. City of New Orleans* cited previously, the Fifth Circuit found *Wheeler* distinguishable on two grounds. First, the City gave Wheeler a building permit and then took it away in an ordinance purporting to be of general application but, in fact, was aimed only at Wheeler. Second, the finder of fact held that the action was indeed without reason. This court finds both these distinctions applicable in the case *sub judice.* In the instant case, the City revoked *nothing* when it enacted its moratorium. When the 1987 moratorium went into effect, Herrington's two properties were exempt from its application. Later, while the 1987 moratorium was still in effect, the mobile home sales establishments located on Herrington's two properties either went out of business or moved to locations outside Pearl, Mississippi. As it was about to expire, the 1987 moratorium was renewed for two more years in 1989. This renewal of the 1987 moratorium was not undertaken in an effort to specifically deny Clyde P. Herrington's request for a permit. The 1989 moratorium was already in effect when Herrington sought a permit for two new mobile home sales establishments in October of 1989. Hence, this court is unable to conclude that the City's enactment of the 1989 moratorium in the case *sub judice* is in any way congruent with the actions taken by the City of Pleasant Grove in the *Wheeler* case.

■ Herrington's assertions that there was no public purpose associated with the moratorium and that its imposition was arbitrary and capricious are conclusory and unpersuasive. The City's belief that a morato-

rium on the location of new mobile home sales establishments with the Pearl city limits would improve the City's economic climate was at least debatable and did not have to be proved as a historical fact before it was implemented. *Shelton v. City of College Station,* at 484. Hence, the moratorium met the threshold of the substantive due process standard—rational basis.

### 2. *Procedural Due Process*

██ It is well established law that once an action is characterized as legislative, procedural due process requirements do not apply. *Jackson Court Condominiums v. City of New Orleans,* 874 F.2d at 1074, citing *Bi-Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915); and *United States v. LULAC,* 793 F.2d 636, 648 (5th Cir.1986). In *Jackson Court Condominiums v. City of New Orleans,* where a city's moratorium on granting permits for time-share housing was upheld, the Fifth Circuit stated:

In cases similar to this, where a zoning decision has been made by an elected body such as a City Council, we have characterized the action as legislative or "quasi-legislative" negating procedural due process claims. A local zoning decision is "a quasi-legislative procedure, not subject to federal juridical consideration in the absence of arbitrary action." *South Gwinnett v. Pruitt,* 491 F.2d 5, 7 (5th Cir.) (en banc), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974).

874 F.2d at 1074.

██ A State (or one of its political subdivisions) may amend or terminate property interests that it has created without depriving affected individuals of due process. When a State extinguishes through legislation property interests, it is said that the legislative determination provides all the process that is due. *Logan v. Zimmerman Brush Company,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Atkins v. Parker,* 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985); *Grimes v. Pearl River Valley Water Supply District,* 930 F.2d 441, 444 (5th Cir.1991). When the Legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process. *County Line Joint Venture v. Grand Prairie, Texas,* 839 F.2d 1142, 1144 (5th Cir.), *cert. denied,* 488 U.S. 890, 109 S.Ct. 223, 102 L.Ed.2d 214 (1988).

██ The enactment of the City's moratorium in this case was a legislative act. Thus, there is no basis for Herrington's due process claim. Legislative acts are accorded great deference and have been set aside only where the governmental body could have had no legitimate reason for its decision. *Shelton v. City of College Station,* at 483, citing *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981). *See City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (ordinance set aside due to no rational relationship with legislative purpose where city required a "special use" permit for a home for the mentally retarded but not for other neighboring special care and multiple-dwelling facilities); and *Williams v. Vermont,* 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985) (car purchaser's residence at time of out-of-state purchase offered no rational basis for imposing different tax obligation once car was brought into the state). As previously stated, the City's belief that a moratorium on the location of new mobile home sales establishments within the Pearl city limits would improve the City's economy was at least debatable. Hence, it cannot be concluded that the City had no legitimate reason for its legislative act.

### d. *Equal Protection*

██ The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws. This is essentially a direction that all persons similarly situated are to be treated alike. *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. at 439, 105 S.Ct. at 3254. Where the challenged action does not appear to classify or distinguish between two or more relevant groups of persons, then there is no violation of the Equal Protection Clause of the Fourteenth Amendment. *Mahone v.*

*Addicks Utility District of Harris County,* 836 F.2d 921, 932 (5th Cir.1988).

Herrington bases his equal protection claim upon the contention that permits to locate new mobile home sales establishments within the city limits of Pearl, Mississippi, were granted to others notwithstanding the 1989 moratorium, but were not granted to him until 1991. The City responds that Herrington is referring to those establishments already located within the city limits that merely changed location in accordance with the 1989 version of the City's moratorium.

█ Once the City demonstrated that no waiver of the 1989 moratorium was granted to those mobile home sales establishments moving from their old locations to new locations within the Pearl city limits and that these establishments had always been located within the city limits, the burden shifted to Herrington to present evidence to the contrary in order to avoid summary judgment on this issue. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Inasmuch as Herrington has submitted no proof to the contrary, he has no basis for his equal protection claim.

### e. *The Claims Arising Under State Law*

Title 28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, pursuant to Title 28 U.S.C. § 1367(c)(3), this court may decline to exercise its supplemental jurisdiction if, "the district court has dismissed all claims over which it has original jurisdiction." So that there will be no confusion over the zoning law issue raised by Herrington, this court recognizes that Herrington has raised the matter of the City's compliance with Mississippi's zoning laws, citing *Emro Marketing Company v. City of Madison, Mississippi,* Civil Action No. J87–0724(W), and noting that this court entered the final judgment in that decision. However, although *Emro* originally asserted federal causes of action under § 1983, the only issue before this court at the time its opinion was entered was whether the City of Madison had complied with Miss.Code Ann. § 17–1–17 (1972).[11] The basis of this court's jurisdiction over that issue in *Emro* was Title 28 U.S.C. § 1332,[12] diversity of citizenship and amount in controversy in excess of $50,000.00. Title 28 U.S.C. § 1332 cannot serve as the basis for this court's jurisdiction in the instant case because there is no diversity between the parties. Therefore, inasmuch as this court finds no basis for any of Herrington's federal claims, this court hereby declines to exercise its supplemental jurisdiction.

### CONCLUSION

The United States Supreme Court expressed the standard for granting summary judgment in *Celotex Corporation v. Catrett,* 477 U.S. at 321–24, 106 S.Ct. at 2552–53:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon a motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essen-

---

11. This section provides the procedure for amending, supplementing, changing, modifying or repealing zoning regulations, restrictions and boundaries. The statute provides in pertinent part that such changes may be made "upon at least fifteen days' notice of a hearing on such amendment, supplement, change, modification or repeal, said notice to be given in an official paper or a paper of general circulation in such municipality or county specifying a time and place for said hearing."

12. Title 28 U.S.C. § 1332(a) provides in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

tial element of the non-moving party's case necessarily renders all other facts immaterial.

In response to a motion for summary judgment, the non-moving party is required to respond with proof of a *prima facie* case, sufficient for a jury to enter a verdict in their favor. *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1122–23 (5th Cir.1988), citing *Celotex Corporation v. Catrett* and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial). Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment in any case where a party fails to establish the existence of an element essential to the case and on which that party has the burden of proof. *Celotex Corporation v. Catrett; Moore v. Mississippi Valley State University,* 871 F.2d 545, 549 (5th Cir.1989). When the moving party has carried the Rule 56(c) burden, the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

This court has carefully reviewed each of Herrington's federal claims under § 1983 and finds them to be without merit. There is no issue of material fact upon which trial may be conducted which is not already precluded by the plaintiff's failure to present proof of a *prima facie* case sufficient to support a finding in Herrington's favor on any federal claim raised in the complaint. Therefore, the complaint is hereby dismissed. The motion for summary judgment submitted by the City of Pearl is well taken and the same is hereby granted. The court will enter a separate judgment in accordance with the local rules.

**SO ORDERED AND ADJUDGED.**